IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Jacori Andre' Carter, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:14cv1065 (LMB/IDD) |
| ) | |
| Keith Davis, et al., ) | |
| Defendants. ) | |

FILED
OCT 16 2014
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

Jacori Andre' Carter, a Virginia inmate proceeding pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, naming as defendants Keith Davis, Warden of Sussex I State Prison ("Sussex"); Joycetine Boone, Assistant Warden of Sussex; Edward Curry, a correctional officer; and E. Martin, a correctional officer. Plaintiff alleges that the defendants violated his First, Eighth, and Fourteenth Amendment rights. Plaintiff has not submitted the filing fee required by 28 U.S.C. § 1914(a) or applied to proceed in forma pauperis. Additionally, for the reasons stated below, this complaint does not conform to all requirements for § 1983 civil actions, and plaintiff will be directed to provide additional information.

I.

Plaintiff alleges that on the morning of March 31, 2014, he asked defendant Curry to notarize some legal papers. Compl. 4. Curry took the papers; however, when the papers were returned, they allegedly had food spilled on them. Id. Plaintiff filed several informal and formal complaints in response to this occurrence. See id. at 4-5.

On April 1, 2014, plaintiff was informed that he would no longer be receiving his Common Fare diet,[1] and would be receiving a restricted diet. Id. at 6. Plaintiff had been approved

---

[1] The Common Fare Diet is essentially a Kosher diet, and was developed by VDOC to meet

to participate in the Common Fare diet in 2009, as the diet satisfies the tenets of Sunni Islam, plaintiff's religion. Id. at 14-15. Plaintiff allegedly "did not receive a Disciplinary Offense Charge to mandate" his restrictive diet, and did not know why he was being placed on the restrictive diet. Id. at 6. On June 5, 2014, plaintiff learned from defendant Boone that defendant Martin had placed him on the restrictive diet due to his "disruptive behavior during the feeding process on [March 31, 2014]." Id. at 8. Martin allegedly placed plaintiff on the restrictive diet after defendant Curry observed plaintiff "throwing water from under his cell door during dinner feeding." Id. at 9.

Curry charged plaintiff with Offense 237A: Throwing/Smearing/Pouring/Discarding Food/Trash/Bodily Waste; however, at plaintiff's disciplinary hearing, the hearing officer determined that the offense should have been charged as Offense 237B: Intentionally Flooding Any Area. Id. at 9. Plaintiff argues that defendant Curry "intentionally" applied the wrong offense code in order to suspend plaintiff's Common Fare diet, in retaliation for plaintiff's complaint against Curry for damaging his legal papers. Id. at 10, 14. Plaintiff argues that he was unable to eat anything for the seven days that he was on the restricted diet. Id. at 14. As a result, he suffered weight loss, abdominal pain, and "severe emotional and mental distress." Id. at 16.

## II.

District courts have a duty to construe pleadings by pro se litigants liberally; however, a pro se plaintiff must nevertheless allege a cause of action. Bracey v. Buchanan, 55 F. Supp. 2d

---

the religious dietary needs of many faiths. See Acoolla v. Angelone, 2006 WL 2548207 at *3 (W.D. Va. Sept. 1, 2006). Because it is "much more expensive" than normal prison fare, an inmate must apply to receive it at his institution. An institutional committee reviews the application, gathers facts about the inmate's religious practices, and approves or denies the request. The decision is then reviewed by a Common Fare Diet committee in Richmond. An inmate's application is approved only if the committee is satisfied that he is a sincere adherent of a religion that requires the elements of the Common Fare Diet. Id.

2

416, 421 (E.D. Va. 1999). To state a cause of action under § 1983, a plaintiff must allege facts indicating that he was deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42 (1988). Moreover, each named defendant must have had personal knowledge of and involvement in the alleged violations of plaintiff's constitutional rights for the action to proceed against that defendant. As presented, plaintiff has not stated a claim against any of the named defendants, but because plaintiff is proceeding pro se, he will be granted an opportunity to particularize and amend his complaint.

A.   Defendants Keith Davis and Joycetine Boone

Plaintiff alleges that defendants Davis and Boone, the warden and assistant warden, respectively, of Sussex, violated plaintiff's First and Eighth Amendment rights by acting with deliberate indifference, exposing plaintiff to an unreasonable risk of serious harm, depriving plaintiff of a basic human need, and depriving plaintiff of the right to follow the practices of his religion, specifically, by denying him the ability to "eat[] Kosher food." Compl. 18.

Supervisory officials such as Davis and Boone may be held liable for constitutional injuries inflicted by their subordinates only in certain circumstances. See Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (citing Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984)). This liability is not premised on respondeat superior, but upon "recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Id. at 798 (quoting Slakan, 737 F.2d at 372-73). "[L]iability ultimately is determined 'by pinpointing the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to

3

continue unchecked.'" Id. To establish supervisory liability under § 1983, a plaintiff must demonstrate:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. at 799 (citations omitted).

Here, plaintiff alleges only that Davis and Boone knew that plaintiff was no longer receiving a Common Fare diet. Plaintiff does not allege that Davis or Boone had any actual or constructive knowledge of constitutional violations by their subordinates. In addition, plaintiff does not allege any causal link between the knowledge that plaintiff was no longer receiving a Common Fare diet and a potential constitutional violation by prison staff. Therefore, in his amended complaint, plaintiff will be given an opportunity to allege specific facts showing that Davis and Boone had actual or constructive knowledge of constitutional violations.

Plaintiff also alleges that defendant Boone violated plaintiff's Fourteenth Amendment Due Process rights by instituting disciplinary procedures without giving plaintiff the opportunity to call witnesses, have a hearing, or present evidence, see Compl. 19-20; however, the exhibits attached to his complaint contain a record of a disciplinary hearing on April 17, 2014. See Ex. K. Because plaintiff's own pleadings clearly establish no Due Process violation by defendant Boone, this claim will be dismissed with prejudice, pursuant to 28 U.S.C. § 1915A(b)(1).[2]

---

[2] Section 1915A provides:

> (a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

4

B.  Defendant Edward Curry

Plaintiff alleges that defendant Edward Curry violated plaintiff's Eighth Amendment rights by deliberately exposing him to an unreasonable risk of serious harm and by "falsifying" a disciplinary charge against plaintiff in retaliation for a previous administrative grievance filed against Curry. He also alleges that Curry violated his First Amendment rights by denying him his Common Fare diet, and violated his Fourteenth Amendment Due Process rights by denying him witness testimony, the opportunity for a hearing, and the ability to present evidence at a disciplinary hearing.

Although not stated explicitly, plaintiff's first allegation against defendant Curry appears to be a claim of cruel and unusual punishment based on the conditions of his confinement. To properly state a claim for cruel and unusual punishment due to conditions of confinement that violate the Eighth Amendment, a plaintiff must allege facts sufficient to show (1) an objectively serious deprivation of a basic human need, that causes serious physical or emotional injury, and (2) that prison officials were deliberately indifferent to that need. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 198 (1991). To meet the first prong, plaintiff must allege facts sufficient to show that the condition complained of was "sufficiently serious." Farmer, 511 U.S. at 834. Only extreme deprivations will make out an Eighth Amendment claim, and it is plaintiff's burden to allege facts sufficient to show that the risk from the conditions of

---

(b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
  (1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or
  (2) seeks monetary relief from a defendant who is immune from such relief.

5

his confinement was so grave that it violated contemporary notions of decency and resulted in serious or significant physical or emotional injury. Hudson v. McMillian, 503 U.S. 1, 8 (1992); Strickler v. Waters, 989 F.2d 1375, 1379-81 (4th Cir. 1993). To meet the second prong, plaintiff must allege facts sufficient to show that defendants knew of facts from which an inference could be drawn that a "substantial risk of serious harm" was posed to his health and safety, that they drew that inference, and then disregarded the risk posed. Farmer, 511 U.S. at 837.

Here, plaintiff has not alleged any specific acts of cruel and unusual punishment by Curry, other than stopping the provision of a Common Fare diet to plaintiff because of disciplinary actions. Plaintiff does not allege that such deprivation seriously affected his health, and does not allege any facts sufficient to show that Curry disregarded a risk of substantial harm to plaintiff. As plaintiff is proceeding pro se, however, he will be allowed an opportunity to particularize and amend his allegations.

In his second allegation against Curry, plaintiff alleges that, in response to an earlier grievance filed by plaintiff, Curry falsified a disciplinary charge and "intentionally" proceeded with an incorrect offense code. See Compl. 20. Although not stated explicitly, this claim appears to be one of retaliation. To properly state a § 1983 claim for retaliation, however, an inmate must show that the allegedly "retaliatory act violated some constitutional right .... or constituted punishment for the exercise of a constitutional right." Cochran v. Morris, 73 F.3d 1310, 1318 (4th Cir. 1996). An inmate must allege facts demonstrating that his exercise of a constitutional right was a substantial factor motivating the retaliation. See Wagner v. Wheeler, 13 F.3d 86, 90-91 (4th Cir. 1993). In addition, plaintiff must show a sufficiently adverse impact on a constitutional right as a result of the retaliatory action. ACLU of Maryland, Inc. v. Wicomico, 999 F.2d 780, 785 (4th Cir. 1993). Where a plaintiff has not alleged an impairment of

his constitutional rights, "there is no need for the protection provided by a cause of action for retaliation;" therefore, a showing of adversity is essential to any retaliation claim. Id. Finally, plaintiff must demonstrate that prison officials' actions did not advance legitimate penological objectives. Talbert v. Hinkle, 961 F. Supp. 904, 911 (E.D.Va. 1997) (citing Pell v. Procunier, 417 U.S. 817, 822 (1974)).

Plaintiff's allegations do not support a claim for retaliation. Plaintiff fails to adequately allege that the exercise of some constitutional right, such as his First Amendment right, was the actual motivation for Curry's retaliation. In addition, plaintiff fails to allege that his constitutional rights were sufficiently impacted as a result of Curry's actions, or that Curry's actions did not serve any legitimate penological purpose, such as maintaining the safety of other inmates or maintaining order in the facility. As plaintiff is proceeding pro se, however, he will be allowed an opportunity to particularize and amend his allegations.

Plaintiff's third claim against Curry arises under the Free Exercise Clause of the First Amendment. To prevail on this claim, plaintiff must allege facts sufficient to make two threshold showings. See McManus v. Bass, No. 2:05cv117, 2006 WL 753017, at *4 (E.D. Va. 2006) (citing Wisconsin v. Yoder, 406 U.S. 205, 215-16 (1972)). First, plaintiff must allege facts sufficient to show that he sincerely holds his religious beliefs. Second, he must show that his claims are rooted in his particular religious belief, rather than in "purely secular concerns." Id. (quoting Yoder, 406 U.S. at 215-16). If plaintiff makes the threshold showing that his Free Exercise rights have been infringed, courts analyze his claim under the reasonableness test set forth in Turner v. Safley, 482 U.S. 78, 79 (1987). Under this test, a court "is required to determine whether a prison policy or regulation burdens the right to free exercise of religion,

7

and, if so, whether a prison policy or regulation is reasonably related to a legitimate penological interest." Lovelace v. Lee, 472 F.3d 174, 199 (4th Cir. 2006).

On the present facts, plaintiff has not stated a claim against Curry for violation of his First Amendment Free Exercise rights. Specifically, he has failed to satisfy the threshold showing that his Free Exercise rights were burdened. In addition, he has failed to allege that his failure to receive a Common Fare diet was not reasonably related to legitimate penological concerns. As plaintiff is proceeding pro se, however, he will be allowed an opportunity to particularize and amend his allegations.

Plaintiff's last claim against defendant Curry is an assertion that Curry violated his Fourteenth Amendment Due Process rights by disciplining him without an opportunity for a hearing or to present witness testimony. The Due Process Clause mandates procedural safeguards before an inmate can be punished by conditions so dramatically different from the basic range of constraints contemplated by his sentence. See Sandin v. Conner, 515 U.S. 472, 483-84 (1995). As the Supreme Court recognized in Sandin, such liberty interests "will generally be limited to the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause by its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. On the other hand, the protections of the Due Process Clause do not attach unless the plaintiff was deprived of such a liberty interest. Lekas v. Briley, 405 F.3d 602, 607 (7th Cir. 2005). From the documents provided by plaintiff, it appears that he was actually given a disciplinary hearing on the charge of "intentionally flooding any area," on April 17, 2014. See Compl. Ex. K. Because plaintiff's own pleadings clearly establish no Due Process violation by defendant Curry, this claim will be dismissed with prejudice.

8

C.     Defendant E. Martin

Plaintiff alleges that defendant Martin violated his Eighth Amendment rights by acting with deliberate indifference to a harmful condition, and by depriving him of a "basic human need," which he describes as the Common Fare diet. Compl. 22. Plaintiff argues that Martin was aware of the risk caused by the failure to provide him with Kosher meals, and responded to plaintiff's informal complaints in a "threatening" manner. Id. Plaintiff also argues that Martin violated his First Amendment Free Exercise rights by denying him access to Kosher meals, and violated his Fourteenth Amendment Due Process rights by disciplining him without the opportunity for a hearing or witness testimony. This last claim will be dismissed for the same reasons stated above in relation to defendant Boone and Curry.

To the extent that the remainder of plaintiff's claims against Martin contain the same allegations as are made against Curry, plaintiff has failed to state a claim on these issues, but will be allowed an opportunity to particularize and amend his allegations based on the legal standards laid out above.

### III.

Additionally, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford v. Ngo, 548 U.S. 81, 92 (2006) (requiring complete exhaustion of correctional facility administrative remedies). Plaintiff, as a Virginia inmate, is required to exhaust the claims raised in the instant complaint in accordance with the Virginia Department of Corrections ("VDOC") grievance procedures. In particular, he must comply with VDOC Department Operating Procedure ("DOP") 866, which provides multiple levels of administrative

9

remedies in the form of inmate grievances. Per DOP 866-7.13, an inmate must first attempt to resolve any issues informally. Prison officials must respond to the inmate's complaint within fifteen days of receiving an informal complaint. See DOP 866-7.13. After seeking informal resolution, an inmate may file a regular grievance with the warden or superintendent. The grievance must be filed within thirty days of the underlying incident or occurrence. See DOP 866-7.14. Depending on the subject of the grievance, up to two additional levels of review by higher authorities within VDOC may be available following the filing of a regular grievance. See DOP 866-7.15.

It is unclear at this time whether plaintiff has completely exhausted all available administrative remedies. Before this action may proceed, plaintiff will be required to submit additional information concerning his exhaustion of administrative remedies, in the form of the attached exhaustion affidavit.

Lastly, Plaintiff is advised that the required fees for filing a civil action in federal court have increased to $400.00, consisting of a $350.00 filing fee and a $50.00 administrative fee. If plaintiff qualifies for in forma pauperis status he will only have to pay the $350.00 filing fee.

## IV. Conclusion

For the reasons stated above, plaintiff's Due Process claims will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1), he will be given an opportunity to particularize and amend his other claims, and will be asked to provide more information regarding his exhaustion of administrative remedies and financial information. An appropriate Order will be issued with this Memorandum Opinion.

Entered this 16th day of October 2014.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

10